# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| M.M.M., on behalf of his minor child, J.M.A., *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br><br>Jefferson Beauregard Sessions, III, Attorney General of the United States, *et al.*,<br><br>**Defendants.** | CIVIL ACTION NO. _____<br><br>**DECLARATION OF MANOJ GOVINDAIAH IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMNARY INJUNCTION** |

I, Manoj Govindaiah, declare and state pursuant to 28 U.S.C. § 1746:

1.  I am an attorney licensed to practice law in the States of Illinois, Florida, and Texas. I have been licensed in these states since 2006, 2012, and 2015, respectively. I currently practice law at the Refugee and Immigrant Center for Education and Legal Services ("RAICES") in San Antonio, Texas. I am above the age of 18 years and not a party to this action. I make this declaration of my own personal knowledge, and could and would competently testify to the matters contained herein if called upon to do so. I submit this declaration in support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

2.  Among other persons, I have provided legal services to non-citizen children who have been detained, separated from their parents, deemed unaccompanied minors, and then reunified with their parents, including two Plaintiffs in this action: J.M.A. and E.A.H. They are minors currently detained at the Karnes County Residential Center ("Karnes") and were recently reunited with their fathers after a period of separation. I have spoken with J.M.A., E.A.H., and their fathers, and I have reviewed their available immigration files.

3.  J.M.A. and E.A.H. seek asylum and fear persecution in their country of origin, but have been denied the opportunity to go through proceedings under Section 240 of the Immigration and Nationality Act ("INA") after the government placed them in such proceedings, and they have been denied the opportunity for an interview with an asylum officer to evaluate whether the child has a "credible fear" of persecution under INA § 235.

4.  After being separated from their parents, J.M.A. and E.A.H. were issued Notices to Appear for removal proceedings under INA § 240. However, I believe those notices either were never filed or have been withdrawn by the government. Therefore, J.M.A. and E.A.H.

were never given the opportunity to petition for asylum through Section 240 proceedings before being reunited with their parents.

5. In addition, E.A.H. has not been given a credible fear interview since being reunited with this father at Karnes. On July 19, 2018, at the request of E.A.H., lawyers from RAICES assisted him in expressing a fear of return to Honduras, which typically would result in a credible fear interview. We assisted E.A.H. by completing a "Resident Request to Staff" form, which is the ordinary process for expressing a fear of return at the Karnes County Residential Center, and instructed E.A.H. and his father that they would need to submit the form to ICE using a mailbox that is located inside the residential space in Karnes, where we, as attorneys, cannot access. The standard practice is that ICE officers issue a written response to such forms. To my knowledge, E.A.H. never received a response to that request form, though his father verbally confirmed that he submitted the form in the mailbox as instructed. The "Resident Request to Staff" form was scanned and emailed to ICE officers and USCIS Asylum Officers that work at Karnes, with proof that we are E.A.H.'s attorney of record. ICE has yet to respond to the email. The Asylum Office, however, responded the following day saying they lack jurisdiction over the request because ICE has not referred the case to the Asylum Office. At some point between July 21-23, 2018, the Asylum Office contacted Plaintiff E.A.H. and his father and provided him with an M-444 form which describes an asylum applicant's rights in the credible fear process, and advised that he would be scheduled for a credible fear interview, but did not provide a date or time. On July 26, 2018, I contacted the Asylum Office to inquire as to the status of Plaintiff E.A.H.'s credible fear interview, however they indicated that the case had not been referred to them by ICE.

6. J.M.A. has not been given a credible fear interview since being reunited with this father at Karnes either. On July 19, 2018, Plaintiff J.M.A. indicated to a RAICES attorney that he had a fear of return. Later that evening, we emailed ICE officers and USCIS Asylum Officers that work at Karnes to state that J.M.A. has a fear of returning to Honduras, and attached proof that we are J.M.A.'s attorney of record. ICE has yet to respond to the email. The Asylum Office, however, responded the following day saying they lack jurisdiction over the request because ICE has not referred the case to the Asylum Office. On July 20, 2018, lawyers from RAICES assisted J.M.A. in completing a "Resident Request to Staff" form, and instructed J.M.A. and his father that they would need to submit the form to ICE using the mailbox that is located inside the residential space in Karnes. They later received a response, dated July 21, 2018, that said in Spanish "wait for your interview." On July 23, 2018, J.M.A. was issued a "Notice of Interview for Credible/Reasonable Fear" that indicated he would receive a credible fear interview on July 26, 2018. On July 26, 2018 I emailed the Asylum Office to ask the status of the interview, and they responded that ICE had rescinded the "ER triggering docs" so the Asylum Office no longer had jurisdiction to consider J.M.A. for credible fear.

7. Prior to the implementation of the government's family separation policy, requests of the nature described Paragraphs 6 and 7 above were honored by ICE. However, since the government has started reunifying families that were separated, ICE officials have not responded to requests we have sent to their attention regarding credible fear interviews of reunified children detained at Karnes. Thus, I do not believe ICE has any intention of honoring these requests.

8. The accompanying parents or guardians of J.M.A. and E.A.H., M.M.M. and I.A.T., respectively, have received their own expedited removal orders after receiving a negative

finding from the Asylum Office on their credible fear interviews. However, these credible fear interviews were conducted after the parent or guardian had been separated from their child. Many, if not all, of the separated parents we have worked with were experiencing extreme emotional distress and trauma at the time of their credible fear interviews, making it nearly impossible for them to focus on anything other than the location and wellbeing of their children.

9. In addition, because of the separation policy, J.M.A.'s and E.A.H.'s parents or guardians were unable to consult with them prior to the parents' or guardians' own credible fear interviews. The ability of a parent or guardian to consult with the child prior to a credible fear interview is extremely important. Based on my experience, I am aware of cases in which the child knew of facts that the parent does not know that would strengthen the parent's claim of asylum and increase the likelihood of a positive finding in the parent's credible fear interview. For example, a child could be threatened that if he does not join a particular gang, the gang will harm or kill the parent. These kinds of cases are common.

10. J.M.A. and E.A.H. are not independently subject to expedited removal orders that I am aware of, and the Plaintiffs are not named on the orders issued to their parents. I am not aware of any removal order of any kind that J.M.A. and E.A.H. are currently subject to, and do not believe the United States has legal authority to remove them from the country.

11. I understand that the accompanying parents or guardians of Plaintiffs J.M.A. and E.A.H. agreed to deportation for themselves and for their children in exchange for reunification with their children. ICE secured these agreements by pressuring parents or guardians into signing various rudimentary forms that provided them two basic options: (1) be deported with your child, or (2) be deported alone. No form that I have seen provided any indication about what the child's or parent's rights were under the immigration laws, or what alternatives might

be available to them. No form that I have seen contemplated the right of the parent to be reunified with their child while their child applies for immigration relief. Many parents were not able to consult with a lawyer before signing, and elected to be deported with the child because they were so desperate to be reunited with their child, and were led to believe it was the only way, or quickest way, to be reunited. I believe that ICE is treating such selections as a "waiver" of any rights the child and/or parent might have under the immigration laws so that ICE can deport the entire family as soon as possible following reunification.

12. Based on the foregoing, I believe that Plaintiffs and their parents or guardians are in serious danger of being deported without the Plaintiffs ever going through removal proceedings under Section 240 or receiving the required credible fear interviews under Section 235. And the Plaintiffs and their parents are not alone. They are among hundreds of children and parents in similar circumstances who have suffered the same pattern of behavior by ICE and other government officials.

13. It is my understanding that Plaintiffs J.M.A. and E.A.H. will be deported with their parents or guardians to Honduras as early as Saturday, July 28, 2018, without the opportunity for their own credible fear interview. This understanding is based on the fact that both fathers have already spoken with the Honduran Consulate, which is a required step for the preparation and issuance of travel documents before being deported. I believe they spoke with the Honduran Consulate on or about July 19, 2018. The fathers relayed to me that the consular official told them they would be deported very soon, and discouraged them from continuing to fight their cases. The consular official did not acknowledge that J. M.A. and E.A.H. have no removal orders and that the United States has no legal authority to deport the children.

14. In my experience, when a family speaks with their consulate for the issuance of travel documents, they will be deported shortly thereafter, usually within a few days. I believe these families have not been deported sooner because the judge in *Ms. L v. ICE, et al*, No. 18-cv-00428-DMS-MDD (S.D. Cal., Feb. 2018), has issued a stay of removal through July 27, 2018.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of July, 2018, in San Antonio, Texas.

_____
Manoj Govindaiah