# EXHIBIT 8

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

M.M.M., on behalf of his minor child, J.M.A., *et al.*,

**Plaintiffs,**

**v.**

Jefferson Beauregard Sessions, III, Attorney General of the United States, *et al.*,

**Defendants.**

**CIVIL ACTION NO. _____**

**DECLARATION OF SHALYN FLUHARTY  IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMNARY INJUNCTION**

I, Shalyn Fluharty, declare and state pursuant to 28 U.S.C. § 1746:

1.      I am an attorney licensed to practice law in the State of California since 2010. My practice has focused on representing detained unaccompanied immigrant children, and detained immigrant families before the Executive Office of Immigration Review and the Department of Homeland Security. I currently serve as the Managing Attorney of the Dilley Pro Bono Project in Dilley, Texas. I am above the age of 18 years and not a party to this action.  I make this affidavit of my own personal knowledge, and could and would competently testify to the matters contained herein if called upon to do so.   I submit this affidavit in support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

2.      I currently represent many non-citizen children asylum-seekers who have been detained, separated from their parents, deems unaccompanied, and then reunified with their parents. I represent four of the Plaintiffs in this action: D.B.G., A.M.C., L.A.A., and G.M.A. They are children currently detained at the South Texas Family Residential Center ("STFRC") with their mothers.  I have spoken to all of them, and their parents, and I have reviewed their available immigration files.  I have also spoken to many other families detained at STFRC as well, before and after recent reunifications.

1.      D.B.G., A.M.C., L.L.A., and G.M.A. seek asylum and/or fear persecution in their country of origin, but have been denied the opportunity for an interview with an immigration judge or asylum officer to evaluate whether the meet the "refugee" definition as defined by 8 U.S.C. § 1158.

2.      Under information and belief, D.B.G., A.M.C., L.L.A., and G.M.A. were issued Notices to Appear for removal proceedings under Section 240 of the Immigration and Nationality Act after being separated from their parents. Those notices were never filed with the

Executive Office of Immigration Review prior to their reunification with their parents. Therefore, D.B.G., A.M.C., L.L.A., and G.M.A.  were never given the opportunity to petition for asylum through Section 240 proceedings.

3.     After their reunification, on July 20, 2018, lawyers and paralegals from the Dilley Pro Bono Project assisted D.B.G., A.M.C., L.L.A., and G.M.A. in expressing their fear to return to Honduras. I helped each child complete and sign a declaration, stating their fear and desire to see an immigration judge of asylum officer. Members of the Dilley Pro Bono Project placed these in an Immigration and Customs Enforcement mailbox at 3:55 C.S.T. on July 20, 2018. This would typically result in a credible fear interview. It has now been a week and ICE and USCIS have not yet responded to these requests.

4.     Prior to the implementation of the government's family separation policy, requests of the nature described above were immediately honored by ICE.  Without hesitation ICE would refer the individual's case – regardless of if the referral was for a mother or child – contact USCIS and refer the individual for a credible fear interview. However, ICE officials have not responded to the requests of D.B.G., A.M.C., L.L.A., and G.M.A.  in Dilley. Thus, I do not believe ICE has any intention of honoring these requests.

5.     The accompanying parents of D.B.G., A.M.C., L.L.A., and G.M.A. have final orders of removal subsequent to their own expedited removal orders after receiving a negative finding from the Asylum Office on their credible fear interviews.  All of the Plaintiffs' parents were suffering from emotional distress so severe during their interviews they were unable to participate meaningfully in their own interview. Nothing was more pressing for each of the mothers than finding their children to ensure their safety and wellbeing.

6.      In addition, because of the separation policy, the Plaintiffs' parents were unable to consult with Plaintiffs prior to their own credible fear interviews. Many of the Plaintiffs, like most of my child clients, knew crucial information relevant to proper adjudication of their mother's case.

7.      D.B.G., A.M.C., L.L.A., and G.M.A. are not subject to orders of removal, that I know of. In fact, I am not aware of any removal order of any kind that the Plaintiffs are currently subject to. Furthermore, I do not believe the United States of America has legal authority to remove them.

8.      I understand that the Plaintiffs' parents agreed to deportation for themselves and for their minor children in exchange for reunification with their children.  Based on my conversations with parents, I believe ICE secured these agreements by pressuring parents or guardians into signing various forms that essentially gave them two options: (1) be deported with your child, or (2) be deported alone.  No form that I have seen provided any indication about what the child's or parent's rights were under the immigration laws, or what alternatives might be available to them.  No form that I have seen contemplated the right of the parent to be reunified with their child while their child applies for immigration relief.

9.      Some forms provided a third option of being able to speak to a lawyer, but many parents elected to be deported with their child because they were so desperate to be reunited and believed it was the only way to be reunited, or at least the quickest way.  Based on all of the facts and circumstances of which I am aware, I believe that ICE is treating such selections as a "waiver" of any rights the child and/or parent might have under the immigration laws so that ICE can deport the entire family as soon as possible following reunification.

10.     Based on the foregoing, I believe that Plaintiffs and their parents face immediate removal from the United States, along with hundreds of my other clients.

11.     Unless there is a stay of deportation, I believe Plaintiffs will be deported with their parents to Honduras as early as Saturday, July 28, 2018, without the opportunity for their own credible fear interview or a hearing before the immigration judge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of July, 2018, in Dilley, Texas.


_____

Shalyn Fluharty