**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| M.M.M., ON BEHALF OF HIS MINOR CHILD, J.M.A., *ET AL.*, | ) ) |
| | ) |
| Plaintiffs, | ) ) |
| | )   No. 1:18-cv-1759 (PLF) |
| v. | ) ) |
| JEFFERSON BEAUREGARD SESSIONS, III, ATTORNEY GENERAL OF THE UNITED STATES, *ET AL.*, | ) ) ) |
| | ) |
| Defendants. | ) |
| ——————————————— | ) |

**SUPPLEMENTAL BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION TO TRANSFER VENUE**

**INTRODUCTION**

In light of the Court's discussion of venue and transfer issues at the July 31 hearing on Plaintiffs' motion for a temporary restraining order, Defendants file this supplemental brief in support of transferring Plaintiffs' claims to the Southern District of California, so these claims can be considered with the pending class action relief ordered in *Ms. L. v. ICE*, No. 18-cv-428 (S.D. Cal.) (Sabraw, J.). If the Court transfers this case to the Southern District of California, Defendants will agree to extend their current pause of removals until the end of Monday, August 6, 2018, to allow Judge Sabraw to address this matter in an orderly way. As Judge Rakoff recently explained in transferring a second case filed on behalf of children to Judge Sabraw, "[t]he reason I transferred the other matter to Judge Sabraw is because this whole reunification process has many, many moving parts, and it doesn't make sense to have different judges in different districts trying to deal piecemeal with the issue. There should be one judge looking at it overall." (Exhibit 6 at 5).

This Court should transfer this case to the Southern District of California to be considered with *Ms. L*, a certified class action involving claims, issues, relief, and parties that substantially overlap with this case and in which, over a month ago, the district court issued a preliminary injunction that the present case, if permitted to proceed, will undermine and obstruct.  The court in *Ms. L* certified a nationwide class of parents who were separated from their children when they crossed the border.  The complaint here was filed by class members in *Ms. L* on behalf of their children, and raises issues already considered by the *Ms. L* court: centrally, whether parents who cannot remain in the United States—because they are subject to final removal orders and have not demonstrated an entitlement to pursue protection or relief from removal—are entitled to decide whether they wish to be removed with their children or leave their children behind in the United States to pursue their own avenue of immigration relief.

Parents are entitled to reunification prior to removal, according to the court in *Ms. L*, and because of that, the Court, at the request of class counsel, adopted an election form to evidence this choice.  Indeed, Judge Sabraw's own statements reflect his acknowledgment of parental rights in this very context. *See* Dkt 15-1 at 40, Ms. L, No. 18-cv-428, July 27, 2018 Status Conf. Tr. 39:19-40:2.  He explained that "under the law what matters is the parent," and that "this case has always been about is the due process right to family integrity." *Id*.  He further explained the choice that is necessarily at issue here:  "[T]he parent that makes the decisions" and "[i] t is the parent's view, ultimately, whether to remove together or separately." *Id*.  The form that plaintiffs here challenge reflects this determination.  And at the hearing this Court held this week, Plaintiffs acknowledged that parents could make this determination – and waive further immigration proceedings –on behalf of their children.

The core of Plaintiffs' challenge here involves the same election form required by the *Ms. L* court and the decision it represents. But Plaintiffs here—who are members of the *Ms. L* class and are represented by *Ms. L* class counsel on these claims—cannot, in this Court, collaterally attack that form and the decision it entails, however, by now effectively arguing that parents should not be able to make those decisions on behalf of their minor children (i.e., arguing that minor children have separate rights from those of their parents). Indeed, the *Ms. L* court is considering right now the proper interpretation of that very election form as part of a pending motion to stay removals. The *Ms. L* court granted a brief pause of class member parents pending the resolution of that issue.

In these circumstances here—where another court has issued class-wide injunctive relief, where the issues presented in this Court overlap with the issues before that other court, where the parties here are already class members subject to the other court's class-wide relief, where continued litigation here would undermine the class-wide injunctive relief, and result in inconsistent obligations, and where class members are attempted to collaterally attack another court's injunction and ongoing oversight of that injunction—transfer is plainly warranted. As Defendants have noted, the Southern District of New York has done exactly that in three cases brought there—including another case brought on behalf of a class of children of *Ms. L* class members, just like this case. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [28 U.S.C.] § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990). Here, it is inconceivable that the convenience factors to be considered under Section 1404(a) would not militate towards transfer given the certification of the class in *Ms. L*, the entry of a nationwide injunction and ongoing compliance requirements, and

how far that litigation has already progressed.   Proceeding with another lawsuit "involving precisely the same issues" would be inefficient, sap the resources of the Court and the parties, interfere with compliance with the *Ms. L* injunction, and potentially result in inconsistent rulings on procedural, discovery, and substantive issues overlapping in both cases.   *Id*.   Transfer is also consistent with Section 1404 because Plaintiffs' choice of venue in the District of Columbia lacks an adequate nexus to the events in this case and is not the location of the relevant transactions or occurrences.   Plaintiffs' claim under 8 U.S.C. § 1252(e)(3) poses no obstacle to transfer.   Plaintiffs here do not properly invoke section 1252(e)(3) at all.   And even if they did, all of the reasons given above and below would still decidedly favor all other claims and holding the section 1253(e)(3)-related challenge in abeyance pending further litigation in the Southern District of California.

## BACKGROUND

This case was filed long after a previously filed class action, *Ms. L*, which was brought on behalf of the parents of separated children seeking to be reunified for purposes of custody and removal.   *Ms. L* is being litigated by a class that includes the very individuals that purport to bring this case on behalf of their children; those individuals are represented by class counsel on these claims; and those individuals have already secured class certification and an injunction requiring reunification with their children.   A subset of those very parents has nonetheless filed this suit, and without explaining why they should not be considered part of the *Ms. L* class.   The chronology of the cases shows that allowing this case to proceed in this Court will create conflict, confusion, and overlapping obligations, given the class-wide injunctive relief granted by another court.

## I. The First-Filed Case In The Southern District of California.

On February 26, 2018, Ms. L filed suit in the Southern District of California.   *See Ms. L*, No. 18-428 (S.D. Cal.), Dkt. 1.   On March 9, the *Ms. L* plaintiffs filed an amended complaint, a

motion for preliminary injunction, and a motion for class certification.  *See Ms. L*, Dkt. 32, 35, and 48.  The *Ms. L* plaintiffs—parents of families separated after crossing the border—challenged that separation, requested reunification, and sought relief based on the Due Process Clause, the Administrative Procedure Act, and the impact of separation on asylum rights.  *See Ms. L*, Dkt. 1, 32, and 85.  On June 26, the *Ms. L* court certified a nationwide class of parents separated from their children and granted a class-wide preliminary injunction that was based on the plaintiffs' claim that the federal government's separation of children from their parents in immigration detention violated the Fifth Amendment.  *Ms. L*, Dkt. 82–83.  In granting class relief, and as relevant here, the *Ms. L* court's injunction required that class members be reunified with their children within 14 days of the court's order for children under 5, and within 30 days for all other children.  The injunction also bars future separations without certain findings, and bars removals of class member parents prior to reunification absent an affirmative, knowing, and voluntary waiver of reunification by a parent.  *Ms. L*, Dkt. 83, at 24.

The federal government is implementing the relief required by the *Ms. L* injunction.  *See Ms. L*, Dkt. 86, 88.  To that end, the *Ms. L* court has been holding regular status conferences, where the parties are required to provide the court with joint status reports.  *See Ms. L*, Dkt. 91, 95, 96, 97, 99, 101.  The most recent such conference was held on Friday, July 27, 2018, and the most recent such report was filed on July 26, 2018.  A further report and status conference are scheduled for later this week.

The *Ms. L* order addresses parents who were subject to final removal orders—normally because they had not established a "credible fear" of persecution after arriving at or illegally crossing the border.  Defendants were "enjoined from removing any Class Members without their child, unless the Class Member affirmatively, knowingly, and voluntarily declines to be reunited

with the child prior to the Class Member's deportation." *Ms. L*, Dkt. 83, at 24.  The *Ms. L* class members sought and obtained court approval for an election form that implemented this provision of the injunction.  *See Ms. L*, Dkt. 148-2 (Exhibit 1).  They have more recently asked the district court to stay removals for seven days following reunification to permit this election to be made, and the district court has temporarily stayed removals for seven days following reunification while it considers this request.  *Ms. L*, Dkt. 116.

## II. This Case.

Plaintiffs here are class members in *Ms. L* who raise issues already considered or under consideration by Judge Sabraw in *Ms. L*. Plaintiffs here raise the following four claims: (1) that Defendants have committed due process violations under the Fifth Amendment by separating parents from their children without affording Plaintiffs process under Section 240 through which to seek asylum (Claim I); (2) that Defendants have a mandatory, non-discretionary duty to provide Plaintiffs with a credible fear interview if they have indicated an intent to apply for asylum or a fear of persecution (Claim II); (3) that Defendants have violated the Administrative Procedure Act (APA) by the removal of Plaintiffs and other minor children from proceedings under Section 240 on the basis of coercive and misleading waiver forms (Claim III); and (4) that Defendants have denied Plaintiffs of their rights to pursue asylum in the United States through expedited removal policy under 8 U.S.C. § 1252(e)(3) and have violated the laws of Section 240 and/or Section 235 of the INA (Claim IV).  *See* Compl. ¶¶ 108–30; Compl. at 40.

Plaintiffs in *Ms. L*, raise three claims: (1) that the separation of the class members from their children violates substantive due process and procedural due process under the Fifth Amendment; (2) the separation of class members from their children without any explanation or legitimate justification is arbitrary and capricious and so violates the APA; and (3) separation of

families violates federal law that provides for asylum and other protection from removal and class members have a private right of action to challenge violations of their right to apply for asylum under 8 U.S.C. § 1158(a). *See Ms. L.*, Dkt. 85 ¶¶ 83–97.

In short, the constitutional claims in this case and *Ms. L.* are largely the same. While Claims II and III in this case are not identical to the claims in *Ms. L.*, they rest on similar theories of due process and the APA, and are based on the same underlying facts. Even where the claims do not directly line up, the issues, relief, and parties in this case substantially overlap with *Ms. L.*

## LEGAL STANDARD

Venue is proper in a case where a defendant is an officer or employee of the United States in the district where: (A) any defendant resides; (B) a substantial part of the events or omissions giving rise to the claim occurred; or (C) the plaintiff resides if no real property is involved in the action. 28 U.S.C. § 1391(e)(1). But for the "convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* § 1404(a).

A threshold question is whether the case could have been brought in the district to which transfer is sought. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citations omitted). If a court determines that the case could have been brought in the district to which transfer is sought, that court should next determine whether the case should be transferred by weighing private and public interests regarding transfer. *See, e.g.*, *Bederson v. United States*, 756 F. Supp. 2d 38, 46 (D.D.C. 2010). The parties' private interests include the plaintiffs' choice of forum, defendants' choice of forum, whether the claim arose elsewhere, convenience of the parties, convenience of the witnesses, and ease of access to sources of proof. Public interests include the transferee's familiarity with governing laws, relative congestion of the calendars of the potential transferee and

transferor courts, and local interests in deciding local controversies at home. *Id.* The moving party bears the burden to establish cause to transfer the case. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996) (internal citations omitted).

**ARGUMENT**

Rather than consider the merits of Plaintiff's claims, in accordance 28 U.S.C. § 1404, principles of comity, and the orderly administration of justice, this Court should transfer this case to the Southern District of California so that it can be hear by Judge Sabraw together with *Ms. L.*

**I.     This case should be transferred to the Southern District of California.**

> A.     *This Court should transfer this case to the Ms. L court because the requested relief would interfere with an injunction in an ongoing case, Ms. L that involves overlapping claims, issues, relief, and parties.*

As Defendants argued in opposing Plaintiffs' TRO motion, this case should be immediately transferred to the Southern District of California because the claims, issues, relief, and parties in this case substantially overlap and interfere with the reunification process being administered by Judge Sabraw in *Ms. L*—and thus allowing this case to proceed would undermine compliance with and administration of the *Ms. L* injunction. *See* Dkt. 15, at 3–6.

As Defendants argued in opposing Plaintiffs' TRO motion, this case should be immediately transferred to the Southern District of California because the claims, issues, relief, and parties in this case substantially overlap and interfere with the reunification process being administered by Judge Sabraw in *Ms. L*—and thus allowing this case to proceed would undermine compliance with and administration of the *Ms. L* injunction. *See* Dkt. 15, at 3–6.

The "usual rule" in this Circuit is that '[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *UtahAmerican Energy, Inc. v. Dep't of*

*Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (quoting *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980)). The D.C. Circuit follows this rule because "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously." Id. (quoting *Wash. Metro.*, 617 F.2d at 830); *see Colo. River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts . . . the general principle is to avoid duplicative litigation.").

The Court should apply the "usual rule" and transfer this case to Judge Sabraw. Plaintiffs seek relief that, if granted, would affirmatively interfere with the *Ms. L* litigation. In *Ms. L*, the court approved the use of an "Election Form," which allows an alien parent to elect that, "[i]f I lose my case and am going to be removed, I would like to take my child with me." Exhibit 1 at 2. In approving the use of the Election Form, the *Ms. L* court accepted the established principle that a parent can lawfully waive her child's potential rights to relief, including under the immigration laws. *See, e.g.*, Fed. R. Civ. P. 17(c)(1). Here, however Plaintiffs allege that the government has implemented a policy that unlawfully allows a parent to waive her child's "independent asylum and other statutory protection rights." Mem. 7. If the Court granted injunctive relief on the basis of that allegation, the government and the parents and children subject to Judge Sabraw's injunction would potentially be subjected to inconsistent orders. To avoid the risk of inconsistency, and in accordance with the principles of comity and orderly administration of justice, the Court should transfer this case to Judge Sabraw.

As we explained in our TRO opposition, the risk of conflicting orders and the possibility that all parties and the Government will be subject to inconsistent obligations and conflicting orders is all the reason necessary to transfer this case to Judge Sabraw. Plaintiffs in this case—who are class members in *Ms. L*—cannot seek to litigate a subset of issues directly implicated in *Ms. L*

by splintering those issues into two or more piecemeal litigations. Given the overlapping nature of the claims and relief being sought, it would be in the interest of justice for these claims to be heard by the *Ms. L* court under 28 U.S.C. § 1404(a).  *See, e.g., Zbitnoff v. Nationstar Deed of Trust, LLC*, No. 16-cv-2947, 2016 WL 3926468, at *2 (S.D.N.Y. July 18, 2016) (transferring case due in part "in light of the prior, substantially similar litigation filed by Plaintiff in the Northern District of California," "and that Court's familiarity with [Plaintiff's] claims"); *see also Bent v. Zounds Hearing Franchising, LLC*, No. 15-cv-6555, 2016 WL 153092, at *6 (S.D.N.Y. Jan. 12, 2016) (noting that "transfer will 'substantially advance[] the interests of fairness, efficiency and judicial economy' by preventing duplicative proceedings, avoiding inconsistent results, and 'reducing the overall burden on the parties, non-party witnesses and the judicial system'" (citation omitted)); *Adams v. U.S. Bank, NA*, No. 12-cv-4640 , 2013 WL 5437060, at *6 (E.D.N.Y. Sept. 27, 2013) ("Where another court has familiarity with the parties and issues, it is in the interest of justice to transfer the case to that tribunal in order to alleviate the concerns of 'wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960))).

> **B.**   *Plaintiffs' 8 U.S.C. § 1252(e)(3) claim (Claim IV) does not prevent transfer of this case to the Southern District of California because that claim is meritless and provides no basis for jurisdiction in this Court.*

Plaintiffs' § 1252(e)(3) claim (Claim IV) is no impediment to transfer of these claims to Judge Sabraw and provides no basis for jurisdiction in this Court.

Section 1252(e)(3) provides a narrow cause of action exclusively in this district court over so-called "systemic" challenges to the expedited removal regime, that be raised only individuals actually subject to a final order of expedited removal. *See* 8 U.S.C. § 1225(b), § 1252(e)(3). Specifically, section 1252(e)(3) provides for "judicial review of *determinations*

under section 1225(b) *and its implementation*" within "60 days" of that provisions implementation, but shall be limited to determinations of "whether *such section, or any regulation* issued to implement such section, is constitutional; or [] whether such a *regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section*, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." *Id.* § 1252(e)(3)(A), (B). By its plain an unambiguous terms, a Plaintiff seeking to invoke this provision must be subject to a "determination," *id.*, that is a final decision that inadmissible and subject to expedited removal, *id.* at § 1225(b)(1)(B)(i), and must identify a  written regulation, policy directive, policy guideline, or procedure *issued by or under the authority of the Attorney General to implement such section. Am. Immigration Lawyers Ass'n v. Reno* ("*AILA*"), 18 F. Supp. 2d 38, 57 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000)

Plaintiffs utterly fail to meet this pleading threshold, and so section 1252(e)(3) cannot be an impediment to transfer. Plaintiffs purport to invoke section 1252(e)(3) by alleging vaguely that the federal government has implemented an unlawful "policy of denying [them] their rights to pursue asylum in the United States." Compl. (Dkt. 1), at 40 ¶ 2. But the only "policy" they specifically point to is a document created by the parties involved in the *Ms. L* litigation, which, under the supervision of Judge Sabraw, allows parents, including the named plaintiffs here, to make a decision concerning what is in the best interests of their children. Plaintiffs identify no authority for the proposition that such a document is a written policy, regulation, directive, or procedure, let alone one "issued by or under the authority of the Attorney General to implement" the provisions of 8 U.S.C. § 1225(b); *see AILA*, 18 F. Supp. 2d at 57 (rejecting allegations concerning unwritten policies as basis for claim under section 1252(e)(3)). Instead, what is

11

required—and what Plaintiffs categorically fail to identify—is a written regulation, policy, or guidance issued by the Government as a means of implementing the expedited removal procedures. *See id.*

Plaintiffs attempt to create jurisdiction where none exists by alleging that "DHS, ICE and other Defendants promulgated, at some point after June, 2018, internal written directives implementing the reunification order in *Ms. L* and Executive Order 13841." Compl. ¶ 62. Plaintiffs go on to allege that these directives "ordered DHS and ICE personnel to effectuate the deportation of families as soon as practically possible following reunification by securing the parent's agreement to be deported with their child, extracting the child from removal proceedings under Section 240, and placing the child back in the custody of the parent so that they could be prepared for immediate deportation." *Id*. The complaint further alleges that the challenged policy "of denying Plaintiffs their rights to pursue asylum . . . is reflected in written statements and directives included but not limited to the DHS Fact Sheet . . . ." Compl. ¶ 132.

Plaintiffs vague insinuations of some unspoken policy do not come close to plausibly alleging any such written policy and so cannot be the basis for jurisdiction in this court declining to transfer this case to Judge Sabraw. *See Wash. Alliance of Tech. Workers v. DHS*, 892 F.3d 332, 347 (D.C. Cir. 2018) (affirming dismissal of claim where the "allegation … [wa]s unsupported by any factual allegations" (citing Ashcroft v. *Iqbal*, 556 U.S. 662, 678 (2009)). The DHS Fact Sheet that Plaintiffs reference is not new written guidance issued to implement the Attorney General's authorities under section 1225(b), but public-facing information concerning Defendants' compliance with Judge Sabraw's Order in *Ms. L.* Like the reunification election form, this "fact sheet" is not the type of new policy or directive that is subject to challenge only in this district under section 1252(e)(3).

At bottom, Plaintiffs seek to undermine the decisions of the parents in the *Ms. L* case concerning the welfare of *their* children, *see* Fed. R. Civ. P. 17, and convert that decision into some sort of new written policy concerning the Government's implementation of expedited removal under section 1225(b). That is plainly not the sort of written regulation or policy contemplated by the statute, and because the Court may, on its own motion, find that is lacks jurisdiction under section 1252(e)(3), there is no basis to delay transfer based on Plaintiffs' implausible invocation of section 1252(e)(3). *See* Fed. R. Civ. P. 12(h)(3).

> C.   *To the extent this Court determines that Plaintiffs' § 1252(e)(3) is cognizable, in the alternative, this Court should sever and transfer the first three remaining claims (Claims I–III) to the Southern District of California.*

Even if Plaintiffs' § 1252(e)(3) claim is cognizable, the Court may sever and transfer the Plaintiffs' remaining three claims (Claims I–III) to Judge Sabraw given the obvious overlap between those counts and the issue being litigated in the *Ms. L* litigation.

The Court has discretion to "sever any claim against a party." Fed. R. Civ. P. 21. Courts have broad discretion in determining whether to sever claims under Rule 21. *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 154 F. Supp. 2d 10, 13 (D.D.C. 2001); 4-21 *see Moore's Federal Practice* § 21.05 (2010) (collecting cases). A complaint that advances one or two legal theories applied to multiple, unique factual situations presents a clear case for the exercise of discretion under Rule 21. *See Davidson v. Dist. of Columbia*, 736 F. Supp. 2d 115, 119-22 (D.D.C. 2010); *see also M.K. v. Tenet*, 216 F.R.D. 133, 138 (D.D.C. 2002) (noting how courts should consider whether severance will reduce potential prejudice or confusion of the issues).

Although the D.C. Circuit has generally adopted a "strong policy against piecemeal" cases or appeals,[1] but recognizes an exception where it has dismissed certain claims, transferred the remainder of the case elsewhere, and no other review of the dismissed claims was possible. *See Murthy v. Vilsac*, 609 F.3d 460, 463–64 (D.C. Cir. 2010) (explaining how an exception to the court's view of partial transfers exists).

Severing Count I-III is plainly warranted and will allow the parties to litigate, and the courts to adjudicate, the claims in an efficient manner while reducing the possibility for conflicting decisions or rulings. This will promote judicial efficiency and avoid wasting substantial resources that would be required if the virtually similar claims were litigated in multiple courts. Rule 21 "'authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons' . . . . [such as where] they arise from different factual situations." *Khanna v. State Bar of Cal.*, No. C-07-2587 EMC, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007) (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)).

The fact that some of the Defendants may be properly venued here does not change the analysis. "Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum." 7 Wright& Miller, *Federal Practice and Procedure* § 1689, at 517 (collecting cases). Thus, where, as here, venue is improper or inconvenient as to some claims or parties, the court may sever those claims and transfer the severed claims to another district for the convenience of the parties and witnesses or in the interest of justice. *See, e.g.*, *FDIC. v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996) (affirming the district

---

[1] *Force*, 795 F.2d 1067, 1070-71 (D.C. Cir. 1986) (per curiam) (affirming dismissal for lack of personal jurisdiction and concluding that the district court did not abuse its discretion in failing to *sua sponte* transfer "an individual claim" under § 1631 where neither party requested transfer and where a related suit was already pending in a district where personal jurisdiction could be obtained over the defendant).

court's order to transfer some, but not all, of plaintiff's claims because the court effectively severed the problematic claims under Federal Rule of Civil Procedure 21 prior to transfer); *accord Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222 (D. Conn. 2001); *Tab Exp. Intern., Inc. v. Aviation Simulation Technology, Inc.*, 215 F.R.D. 621 (D. Kan. 2003); *Hallwood Realty Partners, L.P. v. Gotham Partners*, L.P., 104 F. Supp. 2d 279 (S.D. N.Y. 2000). Once the case is severed, the court has clear discretion to treat the new actions distinctly if appropriate. *See, e.g.*, *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519–20 (10th Cir. 1991). (noting that severance creates "two separate actions . . . ; a district court may transfer one action while retaining jurisdiction over the other")

In sum, the Court has clear authority to sever Count IV if it finds that claim is otherwise plausibly plead, and transfer the remainder of this case to Judge Sabraw.[2]

## II.    The fact that cabinet officials may be venued here is no impediment to transfer.

Plaintiffs offer no strong reason to keep this case venued here where Judge Sabraw, as this Court recognized, can grant full relief to the parties and has already greanted significant relief and continues to oversee ongoing reunification efforts. Indeed, the D.C. Circuit has cautioned repeatedly that against using federal agency headquarters' locations as the sole or primary basis for venue. *See Cameron v. Thornburgh*, 983 F.2d 253, 256–57 (D.C. Cir. 1993); *Pearson v. Rodriguez*, 174 F. Supp. 3d 210, 213–14 (D.D.C. 2016) ; *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009) (holding that, when the only connection to the District of Columbia "is that a

---

[2] Even if the Court retains the § 1252(e)(3) claim and does not decline jurisdiction, it would nevertheless lack jurisdiction to grant the stay of removal that Plaintiffs request. The Immigration and Nationality Act ("INA") deprives district courts of jurisdiction to enjoin the execution of a final expedited removal order, *see* 8 U.S.C. §§ 1252(a)(2)(A)(i), 1252(e)(1), (2), (4), and more generally forbids district courts from hearing any cause or claim that arises from the government's "decision or action . . . [to] execute removal orders," *id.* § 1252(g). These provisions foreclose the stay of removal that Plaintiffs request.

federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process, venue is not appropriate in the District of Columbia" (citing *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008))). And that is especially appropriate here where the sole statutory hook on which Plaintiffs rely, section 1252(e)(3) provides no plausible basis for jurisdiction, and therefore no reason whatsoever to litigate this case piecemeal from *Ms. L.*

That Plaintiffs allege that some portion of the relevant events may have occurred here is of no moment. First, all of the relevant events in this case either occurred in Texas or in an undisclosed location in the United States, not in the District of Columbia. Compl. (Dkt. 1) ¶¶ 68-104.; *see id.* ¶¶ 68-102 ("J.M.A. and his father were apprehended by border patrol agents around Eagle Pass, Texas," "J.M.A. was taken . . . to a shelter in San Antonio, Texas where he was detained" *Id.* ¶¶ 68-70; "E.A.H. and his father were apprehended by U.S. border patrol agents in McAllen, Texas," "E.A.H. was taken to Harlingen, Texas where he was detained"); *id.* ¶¶ 75-76; "D.B.G. and her mother were apprehended by immigration officers in Texas . . . ", "D.B.G. was taken on an airplane to Miami Florida." "D.B.G. and her mom are now detained together in Dilley, Texas." *Id* at ¶¶ 83-86); "[G.M.A.] then was taken to a shelter in New York where she was detained . . . ", "While in New York, G.M.A. had a foster mother . . . " *Id* at ¶ 92; "[A.M.C.] was driven to a shelter in Texas . . . " *Id* at ¶ 98; "L.A.A. was taken to Raymondville, TX where she was detained . . . " *Id* at ¶ 102.). The District of Columbia is thus neither the district of the Plaintiffs' residence nor the location of *any* portion of the events giving rise to their Complaint. *See, e.g.*, *Lamont v. Haig*, 590 F.2d 1124 (D.C. Cir. 1978) (ruling that venue may be laid in a district where a *substantial* portion of the acts or omissions giving rise to the action occurred, notwithstanding that venue also might lie in other districts, so long as the substantiality of the operative events is determined by assessment of their ramifications for efficient conduct of the suit).

16

Second, and more importantly, even had some decision relevant to these claims arisen in this district, that would be true of *Ms. L* and the three cases transferred from the Southern District of New York to Judge Sabraw. That some aspect of this case may derive from decisions promulgated in D.C. is besides the point. The point is that all these issues are already well-developed in *Ms. L*, and any decision in this case will raise the quintessential risk of inconsistent obligation or conflicting orders that Judges Rakoff and Furman had in mind when they transferred their cases to Judge Sabraw. Because section 1252(e)(3) is no impediment to transfer, this Court should do the same.

**III.    At least two other district judges have transferred cases to the *Ms. L* court that overlapped with the issues, claims, and relief in in *Ms. L*—including claims, like those here, brought on behalf of children in separated families—and this Court should do the same.**

Finally, it is worth emphasizing that three other cases, brought on behalf of separated children, have been transferred to the Judge Sabraw.  The reasons for those transfers strongly supports transfer here.

The first such transfer was the July 19, 2018 decision by Judge Furman in *N.T.C. v. ICE*, No. 18- 6428, Dkt. 20, slip op. (S.D.N.Y. July 19, 2018) (Exhibit 2).  The court in *N.T.C.* addressed whether a putative class action "brought on behalf of children who were separated from their parents and are now being held in New York State" should be able to "seek to ensure that each class member has a meaningful opportunity to pursue asylum."  *Id.* at 2.  Judge Furman "conclude[d] for several reasons that Plaintiffs' claims should be transferred to the Southern District of California to be considered in conjunction with the claims in *Ms. L*." *Id.* at 3. Those reasons warrant emphasis:

> *First*, the . . . two cases concern the same families:  Plaintiffs in this case seek relief on behalf of children whose parents are class members in *Ms. L*.  (*Compare* Order, *Ms. L*, ECF No. 82, at 17, *with* Compl., ¶ 66).  *Second*, the relief Plaintiffs seek in this case is, at bottom,

directly related to the reunification process being supervised by Judge Sabraw. In essence, Plaintiffs here contend that they have rights and interests distinct from the rights and interests of their parents and that the reunification process, and Judge Sabraw's own orders, do not adequately take their distinct rights and interests into account. That may or may not be the case, but Judge Sabraw is in a better position than this Court to decide those questions and to modify his own orders if appropriate. And *third*, in the absence of a single judge presiding over both cases, there is a real risk of inconsistent decisions and conflicting orders—a particularly intolerable risk given the gravity and urgency of the issues in these cases (and the prospect of similar litigation being filed in other states where children separated from their parents are being held).

*Id.* at 3–4.

Judge Furman recognized that permitting the putative class action in *N.T.C.* to continue in parallel to *Ms. L* would lead to duplicative litigation, wastefulness, and potential for conflicting court orders. He concluded that "the inconvenience to Plaintiffs . . . is *vastly* outweighed by the interests of justice, fairness, efficiency, and avoidance of conflict advanced by having a single judge presiding over both cases," and ordered the case transferred. *Id.* at 4 (emphasis added). There is no reason why Plaintiffs' case here should be treated differently from *N.T.C.*'s putative class of children—whose interests Plaintiffs ostensibly wish to protect.

To similar effect is the July 24, 2018 order by Judge Rakoff in *E.S.R.B. v. Sessions*, No. 18-cv-6654, slip op. (S.D.N.Y. July 24, 2018) (Exhibit 3). The court in *E.S.R.B.* addressed whether a habeas petition brought by a group of children who were separated from their parents and being held in New York should be transferred to the Southern District of California. As Judge Furman concluded in *N.T.C.*, Judge Rakoff determined that the claims should be heard by the *Ms. L* court and directed that the *E.S.R.B.* plaintiffs' claims be "transfer[red] . . . forthwith" to be considered in conjunction with the claims in *Ms. L. See* Exhibit 3 at 1. Judge Rakoff's order illustrates why courts should transfer actions with substantial overlap between the parties and issues when one court has certified a class and granted class-wide relief relating to those overlapping issues: "I think the common sense of it is that these matters should, to the maximum extent possible, be

consolidated before as few judges as possible." *E.S.R.B.*, Transcript of Proceedings, at 33 (S.D.N.Y. July 24, 2018) (Exhibit 4). Additionally, Judge Rakoff immediately transferred the third such case to the *Ms. L* court in his July 27, 2018 order in *R.G.H. v. Sessions*, No. 18-cv-6791, slip op. (S.D.N.Y. July 27, 2018) (Exhibit 7).

Recognizing the importance of this issue and the gravity of what is contested in these cases, Judge Sabraw noted at a July 24, 2018 hearing in *Ms. L* that both Judges Furman and Rakoff discussed the potential for transfer with him regarding the cases, and as a result of those discussions, each judge determined that transfer was appropriate. *See Ms. L*, Transcript of Proceedings, at 41–42 (S.D. Cal. July 24, 2018) (Exhibit 5).  Defendants encourage a similar consultation here.

In sum, the benefits of consolidating these cases, given the certified nationwide class in *Ms. L*, are apparent for the same reasons Judge Furman explained: "the classes in the . . . cases concern the same families"; "the relief Plaintiffs seek in this case is, at bottom, directly related to the reunification process being supervised by Judge Sabraw" and "Judge Sabraw is in a better position . . . to decide those questions and to modify his own orders if appropriate;" and "in the absence of a single judge presiding over both cases, there is a real risk of inconsistent decisions and conflicting orders—a particularly intolerable risk given the gravity and urgency of the issues in these cases (and the prospect of similar litigation being filed in other states where children separated from their parents are being held)." *N.T.C.*, 2018 WL 3472544, at *2.  This Court should transfer this case forthwith to Judge Sabraw.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court transfer this case to the United States District Court for the Southern District of California.

Dated: August 1, 2018                                Respectfully submitted,

CHAD A. READLER                                      */s/ Briana Yuh*
Acting Assistant Attorney General                    BRIANA YUH
Civil Division                                       Trial Attorney
                                                     U.S. Department of Justice, Civil Division
SCOTT G. STEWART                                     Office of Immigration Litigation
Deputy Assistant Attorney General                    District Court Section
                                                     P.O. Box 868, Washington, DC 20044
AUGUST E. FLENTJE                                    Telephone: (202) 532-4165
Special Counsel                                      Facsimile: (202) 305-7000
                                                     Briana.Yuh@usdoj.gov
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation           *Attorneys for Defendants*
District Court Section

JEFFREY S. ROBINS
Assistant Director, Office of Immigration Litigation
District Court Section