UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                     )
M.M.M., on behalf of his minor child, )
  J.M.A., <u>et</u> <u>al</u>.,                   )
                                     )
                Plaintiffs,          )
                                     )
        v.                           )     Civil Action No. 18-1759 (PLF)
                                     )
JEFFERSON BEAUREGARD SESSIONS, )
  III, Attorney General of the United States, )
  <u>et</u> <u>al</u>.,                             )
                                     )
                Defendants.          )
_____)


                            OPINION

        This case arises out of the government's controversial "zero-tolerance"

immigration policy, under which immigrant parents unlawfully entering the United States with

their young children were subject to criminal prosecution and forcibly separated from their

children for several weeks.  On June 26, 2018, Judge Dana M. Sabraw of the United States

District Court for the Southern District of California certified a nationwide class of separated

parents and issued a class-wide preliminary injunction requiring the government to reunify

separated families by July 26, 2018.  <u>See</u> <u>Ms. L. v. U.S. Immigration & Customs Enf't</u>,

No. 18-0428, 2018 WL 3129486 (S.D. Cal. June 26, 2018).  With approximately 1,800 families

reunified to date, attention has turned to what lies ahead for these parents and their children.

        Plaintiffs in this action are a putative class of non-citizen children who were

separated from their parents shortly after crossing the United States-Mexico border.  They allege

that defendants – various federal agencies and officials responsible for enforcing immigration

laws and regulations – recently adopted a policy of removing families from the United States immediately after reunification and, as a result, have denied plaintiffs access to certain asylum procedures guaranteed by statute and under the Constitution.

On July 27, 2018, plaintiffs filed a motion for a temporary restraining order and preliminary injunction [Dkt. No. 6]. Following expedited briefing, the Court held a hearing on the motion on July 31, 2018. At the hearing, defendants orally moved to transfer venue to the Southern District of California pursuant to 28 U.S.C. § 1404(a). The following day, defendants submitted a written supplement in support of their oral motion to transfer venue [Dkt. No. 19], and plaintiffs addressed the transfer issue in two supplemental filings [Dkt. Nos. 18 and 23]. Upon careful consideration of the parties' written submissions, the relevant legal authorities, the arguments of counsel in open court on July 31, 2018, and the entire record in this case, the Court will grant defendants' motion to transfer venue, subject to certain modifications.[1]

## I.  BACKGROUND

Plaintiffs filed this action on July 27, 2018. Plaintiffs are six immigrant children ages six through thirteen who were forcibly separated from their parents shortly after entering the United States. See Compl. ¶¶ 68-105. Having recently been reunified with their parents after

---

[1]     In connection with the pending motion, the Court has reviewed the following filings, including the exhibits attached thereto:  Complaint ("Compl.") [Dkt. No. 4]; Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Mot.") [Dkt. No. 6]; Plaintiffs' Motion for Expedited Hearing ("Hearing Mot.") [Dkt. No. 7]; Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Opp'n") [Dkt. No. 15]; Plaintiffs' Reply in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Reply") [Dkt. No. 18]; Defendants' Supplemental Brief in Support of Motion to Transfer Venue ("Venue Mot.") [Dkt. No. 19]; July 31, 2018 TRO Motion Hearing Transcript ("July 31, 2018 Hr'g Tr.") [Dkt. No. 21]; and Plaintiffs' Response to Defendants' Supplemental Brief in Support of Motion to Transfer Venue ("Venue Opp'n") [Dkt. No. 23].

spending several weeks apart, they now face the prospect of another lengthy separation: their parents are subject to expedited removal orders and may soon be removed from the country. See id. Plaintiffs bring this action by and through their parents and next friends under Rule 17(c) of the Federal Rules of Civil Procedure. They also bring class action claims under Rule 23 of the Federal Rules of Civil Procedure on behalf of "all non-citizens under the age of 18 who were separated from their parents or guardians upon (or after) entry into the United States and who are, have been, or will be detained by the U.S. government at any time since January 1, 2018." See id. ¶¶ 10-16, 106.

Plaintiffs' core allegation is that defendants have deprived them of their right to pursue their own, independent asylum claims after reunification with their parents. See Compl. ¶ 42. Plaintiffs allege that this right is separate from the right of a parent to seek asylum on his or her own behalf, see id. ¶ 46, and may not be waived by the parent on behalf of the child, particularly when the waiver is not knowing, intelligent, and voluntary, see id. ¶ 50. According to plaintiffs, defendants have coerced parents into abandoning their children's asylum claims in order to remain together as a family unit. See id. ¶ 46. Plaintiffs further allege that defendants have obtained invalid waivers from parents that purport to waive the rights of their children to pursue asylum and to be accompanied by their parent while their asylum application is pending. See id. They maintain that parents do not have the legal authority to waive their children's rights in this manner. See id. ¶ 50. Based on those and other allegations, the complaint asserts four causes of action: (1) violations of the Due Process Clause of the Fifth Amendment (Count I); (2) petition for a writ of mandamus under 28 U.S.C. § 1361 (Count II); (3) violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a) (Count III); and (4) judicial review of defendants' expedited removal policy under 8 U.S.C. § 1252(e)(3) (Count IV).

On July 27, 2018, plaintiffs filed a motion for a temporary restraining order and preliminary injunction. See TRO Mot. at 1. Plaintiffs seek to temporarily restrain defendants from depriving them of their right to pursue asylum upon reunification with their parents pending a full hearing on their preliminary injunction motion. See id. They further move for a preliminary injunction requiring defendants to permit plaintiffs to pursue asylum following reunification with their parents or guardians and in consultation with them. See id.

Defendants filed an opposition to plaintiffs' motion on July 30, 2018, arguing primarily that the Court should transfer this case to the Southern District of California for consideration together with the Ms. L. class action pending before Judge Sabraw and two other actions brought on behalf of separated children that were recently transferred to him. See N.T.C. v. ICE, No. 18-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018); Order, E.S.R.B. v. Sessions, No. 18-6654 (S.D.N.Y. July 24, 2018), ECF No. 4. The Court held a hearing on plaintiffs' motion for a temporary restraining order on July 31, 2018, during which defendants orally moved to transfer venue. See July 31 Hr'g Tr. at 32. Defendants also submitted a supplement to their oral motion to transfer venue. See Venue Mot. at 1-2. Plaintiffs filed a reply in support of their motion for a temporary restraining order, see TRO Reply, as well as a response to defendants' motion to transfer venue, see Venue Opp'n.

Meanwhile, on June 26, 2018 in the Southern District of California, Judge Sabraw issued a class-wide preliminary injunction requiring the government to reunify separated families by July 26, 2018. See Ms. L. v. U.S. Immigration & Customs Enf't, 2018 WL 3129486, at *11-12. On July 16, 2018, the Ms. L. plaintiffs asked Judge Sabraw to impose a seven-day waiting period before members of reunified families can be removed from the country – relief sought to ensure that parents can consult with their children and counsel about legal options prior

to removal.  That day, Judge Sabraw temporarily stayed removals of reunified families pending his decision on plaintiffs' request for a seven-day waiting period.  See Order, Ms. L. v. U.S. Immigration & Customs Enf't, No. 18-0428 (S.D. Cal. July 16, 2018), ECF No. 116.[2]

## II.  LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice," so long as the transferee district is one where the case "might have been brought."  See 28 U.S.C. § 1404(a).  Section 1404(a) affords the Court broad discretion in determining whether transfer from one jurisdiction to another is appropriate.  See Ravulapalli v. Napolitano, 773 F. Supp. 2d 41, 55 (D.D.C. 2011) (citing SEC v. Savoy Indus. Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978)). The decision to transfer is made based on an "individualized, case-by-case consideration of convenience and fairness."  See Ravulapalli v. Napolitano, 773 F. Supp. 2d at 55 (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)); see also Aracely v. Nielsen, No. 17-1976, 2018 WL 3243977, at *6 (D.D.C. July 3, 2018).  And the moving party "bears a heavy burden" of establishing that plaintiffs' choice of forum is inappropriate and the case should be transferred to another venue.  See Southern Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (quoting Pain v. United Tech. Corp., 637 F.2d 775, 784 (D.C. Cir. 1980)).

---

[2]     The Ms. L. class is defined to include: "All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the [Department of Homeland Security ("DHS")], and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child."  Ms. L. v. U.S. Immigration & Customs Enf't, 2018 WL 3129486, at *3 n.5.  The class does not include "parents with criminal history or communicable disease, or those apprehended in the interior of the country or subject to the [June 20, 2018 Executive Order]."  See id.

Defendants must make two showings to justify transfer under Section 1404(a). First, defendants must establish that plaintiffs could have brought the action in the proposed transferee district. See Aracely v. Nielsen, 2018 WL 3243977, at *7 (citing Van Dusen v. Barrack, 376 U.S. at 616-17); see also 28 U.S.C. § 1404(a). Second, defendants must demonstrate that "considerations of convenience and the interest of justice weigh in favor of transfer to that district." See Aracely v. Nielsen, 2018 WL 3243977, at *7 (citing Trout Unlimited v. U.S. Dep't of Ag., 944 F. Supp. 13, 16 (D.D.C. 1996)). In evaluating whether defendants have made this second showing, the Court weighs several private and public interest factors. See id.; Ravulapalli v. Napolitano, 773 F. Supp. 2d at 55-56.

Cases transferred pursuant to Section 1404(a) must be transferred in their entirety. See 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. CIV. § 3846 (4d ed. 2018). Where all claims in a single case cannot be transferred to a single transferee district, the Court has authority to sever claims, so that one case may be transferred in its entirety pursuant to Section 1404(a), while the remaining claim proceeds as a separate case. See Pinson v. U.S. Dep't of Justice, 74 F. Supp. 3d 283, 288 (D.D.C. 2014); Spaeth v. Mich. State Univ. Coll. of Law, 845 F. Supp. 2d 48, 57 n.13 (D.D.C. 2012) (severing claims prior to transferring venue under Section 1404(a)).

Under Rule 21 of the Federal Rules of Civil Procedure, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV. P. 21. Severed claims become independent actions that proceed separately and result in separate judgments. See Pinson v. U.S. Dep't of Justice, 74 F. Supp. 3d at 288 n.7; see also 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. CIV. § 1689 (3d ed. 2018). District courts have broad discretion in

determining whether severance of particular claims is warranted.  See Spaeth v. Mich. State

Univ. Coll. of Law, 845 F. Supp. 2d at 55 n.11 (citation and internal quotation marks omitted);

M.K. v. Tenet, 216 F.R.D. 133, 137 (D.D.C. 2002); see also WRIGHT, MILLER & KANE, supra,

§ 1689.  In making this determination, courts consider multiple factors, including:  (1) whether

the claims arise out of the same transaction or occurrence; (2) whether the claims present

common questions of law or fact; (3) concerns related to judicial economy, multiplicity of

litigation, and orderly and efficient resolution of disputes; (4) the availability of witnesses and

other evidentiary proof; and (5) the potential for confusion, undue delay, or prejudice to any

party.  See, e.g., Dickerson v. Novartis Corp., 315 F.R.D. 18, 24-25 (S.D.N.Y. 2016); Wultz v.

Islamic Republic of Iran, 762 F. Supp. 2d 18, 32-33 (D.D.C. 2011); Khanna v. State Bar of Cal.,

No. 07-2587, 2007 WL 2288116, at *2-3 (N.D. Cal. Aug. 7, 2007); M.K. v. Tenet, 216 F.R.D. at

137-38; see also Wyndham Assocs. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968), cert. denied,

393 U.S. 977 (1968).[3]

## III.  DISCUSSION

Defendants' alleged policy of depriving children of their right to pursue

independent asylum claims, in combination with other threatened actions, could well result in the

removal of these plaintiffs and other separated children from the country without due process and

possibly in violation of 8 U.S.C. § 1252(e)(3).  The question is whether this Court or Judge

---

[3]    Rule 21 is commonly invoked to sever parties improperly joined under Rule 20,
which governs permissive joinder of parties.  See WRIGHT, MILLER & KANE, supra, § 1689
("[A]lthough the primary significance of Rule 21 is in the context of joinder of parties, it does
have an effect on the joinder of claims.").  Where, as here, severance of a claim rather than a
party is at issue, Rule 21 must be read in conjunction with:  (1) Rule 18, which provides the
parties with "great freedom in the joinder of claims"; (2) Rule 42(b), which authorizes the
separate trial of a claim "in furtherance of convenience or to avoid prejudice, or when separate
trials will be conducive to expedition and economy"; and (3) Rule 42(a), which permits actions
involving a common question of law or fact to be consolidated for trial.  See id.

Sabraw is in a better position to resolve these claims. Defendants have made a persuasive argument that this Court should transfer the instant case to Judge Sabraw in the Southern District of California, as Judges Furman and Rakoff of the United States District Court for the Southern District of New York have done with similar cases brought by separated children. See N.T.C. v. ICE, No. 18-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018); Order, E.S.R.B. v. Sessions, No. 18-6654 (S.D.N.Y. July 24, 2018), ECF No. 4. Indeed, the instant case and the cases of separated parents and children pending before Judge Sabraw involve members of the same families, as well as substantially similar claims that relate directly to the family reunification process and its aftermath, which Judge Sabraw has been closely managing over the last several weeks. Plaintiffs counter, however, that transfer of this case to the Southern District of California is both inappropriate and impossible because this District has exclusive jurisdiction over one of plaintiffs' four claims, Count IV concerning judicial review of expedited removal orders under Section 1252(e)(3).

The Court easily concludes that under these circumstances, a single judge – Judge Sabraw – should be entrusted to untie this sailor's knot. Plaintiffs are correct, however, that the Southern District of California is barred by statute from considering Count IV. The Court therefore will sever Counts I, II, and III and transfer this case with those three claims to the Southern District of California, to be considered together with the similar actions now pending before Judge Sabraw. Because jurisdiction over Count IV lies exclusively in this District, however, Count IV must remain before this Court and will proceed as a separate action brought under Section 1252(e)(3).

*A. Severance of Count IV*

The parties agree that Count IV of the complaint fails the threshold inquiry under Section 1404(a): Count IV could not have been brought in the Southern District of California. Unlike plaintiffs' other statutory and constitutional claims, a claim brought under Section 1252(e)(3) may be brought only in the United States District Court for the District of Columbia. See 8 U.S.C. § 1252(e)(3)(A). Moreover – and importantly to the Court's determination that the other claims can best be handled by Judge Sabraw – Count IV cannot proceed as a putative class action. See 8 U.S.C. § 1252(e)(1) ("Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection."); American Immigration Lawyers Ass'n v. Reno, 199 F.3d 1352, 1358-59 (D.C. Cir. 2000). While Counts I, II, and III may be brought in the Southern District of California and proceed as a putative class action, Count IV involves a claim brought by six individuals over which only this Court has jurisdiction.

Although plaintiffs' four claims clearly arise out of the same transaction or occurrence, they present different considerations which, absent severance, would create significant barriers to the efficient resolution of the myriad claims arising out of the zero-tolerance immigration policy and its aftermath. On the one hand, declining transfer and adjudicating all four claims in this Court would result in duplicative litigation, given that Judge Sabraw is addressing substantially similar issues in the Ms. L. class action and the cases recently transferred from New York. See N.T.C. v. ICE, No. 18-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018); Order, E.S.R.B. v. Sessions, No. 18-6654 (S.D.N.Y. July 24, 2018), ECF No. 4. On the other hand, transferring all four claims to Judge Sabraw would prejudice plaintiffs by

transferring Count IV to a court that so clearly lacks jurisdiction to hear it. Proceeding down one

path would needlessly expend judicial resources, while proceeding down the other would

improperly deprive plaintiffs of the opportunity to litigate Court IV.

These foreseeable complications stand in contrast to a sensible alternative:

severing Count IV from Counts I, II, and III and transferring the case to Judge Sabraw, while

retaining jurisdiction over Count IV as a separate action. As discussed more fully below,

severing Count IV and transferring Counts I, II, and III to Judge Sabraw will permit him to

resolve plaintiffs' claims in this action together with the related claims in the Ms. L. class action

and the two other actions brought on behalf of separated children. See N.T.C. v. ICE, No.

18-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018); Order, E.S.R.B. v. Sessions, No. 18-6654

(S.D.N.Y. July 24, 2018), ECF No. 4. The claims of the parent class and the claims of the

children of those same parents will be before a single judge. As Judge Rakoff observed in

deciding to transfer the case before him to Judge Sabraw, the entire process of reunifying

immigrant families "has many, many moving parts." See Venue Mot. Ex. 6 at 3. Severance and

transfer will advance the goals of judicial economy and the orderly and efficient resolution of

disputes. Moreover, keeping Count IV in this Court will mitigate prejudice to the six individual

plaintiffs: rather than having their claim transferred to the Southern District of California where

it could be dismissed for lack of jurisdiction, Count IV will remain alive in this Court.[4]

Weighing these factors, the Court finds that severing Count IV from Counts I, II,

and III and transferring the case will materially advance the fair administration of justice.

---

[4]     The Court declines to construe defendants' motion to transfer venue as a motion
to dismiss Count IV. At this stage, the question is not whether plaintiffs are subject to a removal
order or whether they have sufficiently alleged a written policy for purposes of 8 U.S.C.
§ 1252(e)(3) (Count IV). Rather, the question is whether Count IV could be brought in the
transferee court for purposes of 28 U.S.C. § 1404(a).

Because jurisdiction over Count IV lies exclusively in this District, however, Count IV will remain before this Court and will proceed as a separate action brought under Section 1252(e)(3).

### B.  Transfer of Counts I, II, and III

The remaining question is whether Counts I, II, and III may properly be transferred to the Southern District of California under 28 U.S.C. § 1404(a).  The parties do not challenge that these claims meet the threshold requirement under Section 1404(a), i.e., that they could have been brought in the Southern District of California.  The Court thus focuses its inquiry on whether the relevant private and public interest factors weigh in favor of transfer to that venue.

The Court easily concludes that Counts I, II, and III should be transferred to the Southern District of California to be considered together with the claims pending in the Ms. L. class action and the actions recently transferred from New York.  First, the instant case and one of the cases pending before Judge Sabraw, N.T.C. v. ICE, No. 18-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018), both involve class action claims brought by separated children rather than by their parents.  More broadly, plaintiffs in this case and in all of the cases pending before Judge Sabraw involve members of the same families.  Plaintiffs in this case are the children of the class members in Ms. L.  All of the cases address both family reunification and the rights of individual family members to pursue various immigration claims.  In this regard, these cases represent two sides of the same coin:  whether and to what extent parents may waive their children's rights to pursue asylum and whether and to what extent children may independently assert their individual asylum rights.

Second, the relief plaintiffs seek in this case is directly related to the reunification process that Judge Sabraw has been admirably overseeing for several weeks.  Here, a putative

11

class of separated children contends that they have rights distinct from the rights of their parents

and that the reunification process does not adequately account for their distinct rights. They

argue that defendants have deprived them of their ability to pursue individual asylum claims and

that defendants have sought to extinguish their independent rights through purported waivers

signed by their parents. Judge Sabraw is in a better position than this Court to decide those

questions and to modify his own orders if appropriate. To the extent plaintiffs' claims turn on

the interpretation of the waiver form approved in the Ms. L. class action, for instance, Judge

Sabraw is better suited to the task than this Court.[5] Contrary to plaintiffs' assertion, this issue is

now squarely before Judge Sabraw, as the parties in the actions pending before him have brought

the instant case to his attention. Transfer to the Southern District of California therefore will

promote the orderly and consistent administration of the issues and claims presented in these

cases.

       The Court acknowledges the deference owed to plaintiffs' choice of forum. The

Court is also aware that transferring this case may inconvenience plaintiffs and their counsel,

some of whom are located in Washington, D.C. But the fact remains that Judge Sabraw is

considering substantially similar issues and has closely supervised the reunification process,

holding dozens of conferences with counsel to date and issuing multiple opinions and orders

concerning the family reunification process. Upon careful consideration of the parties'

arguments, and having consulted with Judge Sabraw with the parties' consent, the Court finds

that transfer is appropriate. The Court therefore severs Count IV from Counts I, II, and III and

---

[5]    In a separate case pending before the Court involving the zero-tolerance immigration policy, the Court characterized a purported waiver form given to a separated parent in June 2018 as "not worth the paper it is written on." M.G.U. v. Nielsen, No. 18-1458, 2018 WL 3432720, at *3 (D.D.C. July 16, 2018). The Court notes that the waiver form at issue in that case was not the waiver form approved by Judge Sabraw in the Ms. L. class action.

transfers this case with those claims to the Southern District of California pursuant to 28 U.S.C. § 1404(a). Judge Sabraw will have to consider whether to certify a class and, more immediately, resolve the pending motion for a temporary restraining order and preliminary injunction. As defendants have agreed not to remove plaintiffs or their parents until August 6, 2018 if plaintiffs' claims are transferred, no temporary restraining order is necessary from this Court at this time.

## IV. CONCLUSION

For the reasons set forth in this Opinion, the Court will grant defendants' motion to transfer venue. The Court will sever Count IV from Counts I, II, and III and transfer this case with those three claims to the United States District Court for the Southern District of California to be considered by Judge Sabraw in conjunction with the related proceedings pending before him. The Court will retain jurisdiction over Count IV as a separate action. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: August 3, 2018