# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M.M., on behalf of his minor child, J.M.A., et al., <br><br> Plaintiffs, <br><br> v. <br><br> JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States, et al., <br><br> Defendants. | Case No.: 18cv1832 DMS (MDD) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

Plaintiffs are migrant children who were forcibly separated from their parents shortly after crossing the United States-Mexico border. The children entered the United States with their parents at or between ports of entry and were fleeing violence from countries in Central America. They were seeking refuge in the United States and hoped to be granted asylum together as a family. However, under the Government's "zero tolerance" immigration policy, immigrant parents unlawfully entering the United States with their young children were subject to criminal prosecution and systematically separated from their children. In less than two months following implementation of the zero tolerance policy, approximately 2,600 families were separated, sparking national protests and condemnation.

The parents of these children sought relief in this Court over the government's family separation practices. On June 26, 2018, this Court certified a nationwide class of separated parents and issued a classwide preliminary injunction requiring the Government to reunify these parents with their children by July 26, 2018, on a showing that the parents' fundamental right to family integrity under the Fifth Amendment to the United States Constitution had been violated. *See Ms. L. v. U.S. Immigration and Customs Enforcement*, ("*Ms. L.*"), Case No. 18cv0428 DMS (MDD), ECF No. 83. The Government marshaled its resources and reunified nearly 2,000 of these parents with their children by the deadline. These timely reunifications were possible because the parents and children were still in the United States. Approximately 400 other parents, however, were deported to countries in Central America without their children prior to the Court's reunification order. An intensive collaborative effort is presently underway to locate and reunite these parents with their children.

With approximately 2,000 families recently reunified in the United States, attention has turned to what lies ahead for these parents and their children. Plaintiffs in this putative class action are the children of the parents in the *Ms. L.* case. They contend that Defendants intend to immediately remove some of the families, thereby depriving Plaintiffs of certain asylum procedures guaranteed by statute and under the United States Constitution. (Compl. ¶ 4.) Over half of the parents completed their asylum proceedings and were issued final orders of removal after their claims were rejected. These parents cleared background checks and were deemed suitable for reunification, but did not otherwise meet the requirements for asylum or other relief from removal. Some of their children, who are Plaintiffs in the present action, were also in asylum proceedings that had been initiated for them by the Government before reunification occurred. Plaintiffs allege that Defendants have "since reversed course, revoking [these proceedings] with the immigration court, presumably on the basis" that their parents waived their rights to seek asylum when they executed forms agreeing to be removed with their children. (*Id.* ¶¶ 49-50.) The Government does not dispute that it intends to remove parents with removal orders, and to

remove their children (Plaintiffs) with them based on the parents' requests to be removed with their children. Plaintiffs dispute that their parents knowingly and voluntarily waived their rights, and thus request the Court to issue a temporary restraining order ("TRO") enjoining the Government from removing them and their parents pending a determination of these issues.[1]

Plaintiffs initially filed this action on July 27, 2018, before Judge Paul L. Friedman in the United States District Court for the District of Columbia. (Case No. 1:18cv01759 PLF.) Judge Friedman observed that these cases, the present one and *Ms. L.*, "represent two sides of the same coin: whether and to what extent parents may waive their children's rights to pursue asylum and whether and to what extent children may independently assert their individual asylum rights." (ECF No. 25 at 11.) On August 3, 2018, Judge Friedman transferred the case to this Court given the interrelated issues and invited it to "untie this sailor's knot." (*Id.* at 8.) To do so requires an understanding of what is actually in dispute and what is not.

Importantly, both sides appear to agree on maintaining family unity—they just do not agree on how the family unit should be treated. Plaintiffs want to access asylum proceedings to which they are statutorily entitled and to be accompanied by their parents, while Defendants want to remove the families forthwith.[2] Plaintiffs therefore seek a TRO prohibiting their removal and the removal of their parents until a determination is made

---

[1] The relief requested here overlaps with the relief requested by the plaintiffs in *Ms. L.* in their July 16, 2018 Motion for Stay of Removal and Emergency Temporary Restraining Order Pending Ruling on the Stay Motion. (*See Ms. L.*, ECF No. 110.) The Court granted the plaintiffs' request for TRO in *Ms. L.* pending the parties' attempt to resolve and brief the issues. On August 15, 2018, Defendants renewed their request for additional time to explore resolution, but Plaintiffs in *M.M.M.* declined the invitation. With this ruling, the TRO in *Ms. L.* is moot, and will be denied in a separate order to be filed in that case.

[2] Importantly, Defendants do not argue, either here or in *Ms. L.*, that they wish to remove parents with final removal orders without their children. Rather, Defendants appear to be seeking removal of parents and children together. The only dispute here is whether those removals should occur now or at a later time.

about whether and to what extent they may assert their individual asylum rights. The principal dispute here is not whether the children have their own asylum rights (Defendants agree they do), but whether their parents waived those rights, and if they did not, what *type* of asylum procedures the children are entitled to—a potentially quick one under § 235 of the Immigration and Nationality Act ("INA"), or a more involved one under § 240 of the INA that was initially provided to some of the children after they were separated.[3]

As noted, this case is not about Defendants' authority—or desire—to deport the parents at issue without their children. It does not appear Defendants wish to do so. Rather, this case is about the *timing* of removal of the *family unit* and whether an orderly asylum process should be permitted. Re-separation of the family would be antithetical to the President's Executive Order which expressly restored family unity and abandoned the family separation policy,[4] and it would greatly exacerbate the intensive efforts presently

---

[3] Plaintiffs point out that families apprehended at or near the border prior to the zero tolerance policy would have gone through § 235 proceedings together. (Mem. of Law in Supp. of Pls.' Application for TRO and Prelim. Inj. at 16, ECF No. 6-1.) In those family proceedings, the asylum officer would make credible fear determinations as to both parent and child, and if one received a positive credible fear finding, that finding would inure to the benefit of the other. (Pls.' Supp. Mem. of Law in Supp. of Mot. for TRO, Ex. A (Decl. of Shalyn Fluharty) ¶¶ 3-5, ECF No. 33.) Plaintiffs note this is important because the credible fear determinations for parents and children are different. In analyzing the parent's claim, the asylum officer considers whether the parent has been targeted with persecution on account of a reason other than race, religion, nationality, political opinion or membership in a particular group. In considering the children's claim, the inquiry may be broader in that their "particular social group" may "be comprised of 'immediate family members' of their" parent. (*Id.* ¶ 3.) If, during this process, either the parent or child receives a credible fear finding, both parent and child are taken out of expedited removal proceedings and placed in proceedings under § 240. (*Id.* ¶ 4.) However, if neither parent nor child receives a positive credible fear finding, both are subject to expedited removal.

[4] *See* Executive Order, Affording Congress an Opportunity to Address Family Separation § 1, 2018 WL 3046068 (June 20, 2018) (stating it is "the policy of this Administration to maintain family unity, including by detaining alien families together where appropriate and consistent with law and available resources.").

underway to reunite the nearly 400 parents who were previously removed from the country with their children who remain in the United States.

For the reasons set forth below, the Court concludes it has jurisdiction to issue the requested injunction and exercises its discretion to do so. Plaintiffs have met all the required factors for the relief they request, including likely success on the merits—which encompasses the waiver issue.

# I.

# DISCUSSION

Generally, injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To meet that showing, Plaintiffs must demonstrate "'[they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). The purpose of a temporary restraining order, in particular, is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974) (noting a temporary restraining order is restricted to its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer").

**A.     Jurisdiction**

Before turning to the merits of Plaintiffs' request for a temporary restraining order, the Court must first address Defendants' argument that the Court lacks jurisdiction to grant the requested relief, more specifically, to enjoin the execution of any final removal orders

issued to Plaintiffs' parents. (*See* Defs.' Opp'n to Mot. at 6-9, ECF No. 15.)[5]  In support of this argument, Defendants rely on the INA, specifically 8 U.S.C. §§ 1252(a)(2)(A)(i), 1252(e)(1), (2), (4), and 1252(g).  Plaintiffs in both this case and in *Ms. L.* disagree that these statutes deprive the Court of jurisdiction to grant the requested relief.  The *Ms. L.* Plaintiffs, in particular, also argue the Court has authority to issue orders necessary to ensure implementation of its injunction in that case. (*See Ms. L.*, ECF No. 110 at 8.)

The statute Defendants rely on to support their argument that the Court lacks jurisdiction is 8 U.S.C. § 1252, which is entitled "Judicial Review of Orders of Removal." Defendants rely first on subsection (a)(2)(A)(i) of this statute, which states, "no court shall have jurisdiction to review any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title."  8 U.S.C. § 1252(a)(2)(A)(i).  Although Plaintiffs in this case did not address this specific statute, the *Ms. L.* Plaintiffs argue this statute does not apply here because the relief they are requesting does not "aris[e] from ... the implementation or operation of an order of removal[.]" *Id.*  Rather, they contend the requested relief arises from "the government's decision to separate them from their children[.]" (*Ms. L.*, ECF No. 110 at 9.)

In *Jennings v. Rodriguez*, ___ U.S. ___, 138 S.Ct. 830 (2018), the Supreme Court addressed the "arising from" language in a neighboring subsection of § 1252.  There, the Court refused to give this language an "expansive interpretation," stating it "would lead to staggering results." *Id.* at 840.  Instead, the Court concluded that § 1252(b)(9) did not present a jurisdictional bar where respondents were "not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek

---

[5] Defendants also raised this argument in their opposition to the motion to stay in the *Ms. L.* case. (*See Ms. L.*, ECF No. 177 at 18-23.)  Because the jurisdictional issue presented in that case is the same as the one presented here, the Court incorporates the parties' arguments and briefing from *Ms. L.* into this discussion.

removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.* at 841.

Here, as in *Jennings*, Plaintiffs are not asking this Court to review any individual removal orders. Indeed, none of the Plaintiffs in this case have final removal orders. The only persons with final removal orders here are Plaintiffs' parents, but they are not challenging the Government's ultimate decision to detain or remove them. All Plaintiffs are asking of the Court is to stay removal of their parents pending resolution of Plaintiffs' separate claims for asylum. Because this request does not "aris[e] from … the implementation or operation of an order of removal[,]" § 1252(a)(2)(A)(i) does not deprive this Court of jurisdiction to consider Plaintiffs' request.

Next, Defendants rely on § 1252(e)(1). That statute provides, no court may "(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection[.]" 8 U.S.C. § 1252(e)(1). The parties do not devote much attention to this subsection, but like § 1252(a)(2)(A)(i), it also does not deprive this Court of jurisdiction to entertain Plaintiffs' request. On its face, this statute applies only to "action[s] pertaining to an order to exclude an alien in accordance with section 1225(b)(1)[,]" 8 U.S.C. § 1252(a)(1)(A), and the cases and motions at issue here do not fit that description. Thus, this statute does not act as a jurisdictional bar to the Court's consideration of the motion.

The final subsection of the statute Defendants rely on is § 1252(g). This subsection states "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Like subsection (a)(2)(A)(i) above, the relevant language here is "arising from," and as stated above, the claims in the cases and motions at issue here do not "arise from" the Attorney General's decision to execute removal orders against parents in *Ms. L.* Rather, the claims in *Ms. L.* and the relief requested in the motion to stay

in that case arise from the parents' separation from their children pursuant to Defendants' policies. The present case is even farther afield of § 1252(g) as the claims here are brought on behalf of the children of *Ms. L.* parents, none of whom even have final orders of removal. Thus, § 1252(g) does not deprive the Court of jurisdiction to consider the present motion. *See Arce v. United States*, ___ F.3d ___, 2018 WL 3763524, at *2-4 (9th Cir. Aug. 9, 2018) (rejecting government's argument that § 1252(g) deprived the courts of jurisdiction to hear "FTCA claims of a noncitizen who was wrongfully removed in violation of a court order."); *Barahona Gomez v. Reno*, 167 F.3d 1228, 1233 34 (9th Cir. 1999) (rejecting defendants' argument that § 1252(g) deprived court of jurisdiction to "stay deportation pending resolution of [plaintiffs'] constitutional claims."); *Walters v. Reno*, 145 F.3d 1032, 1051 53 (9th Cir. 1998) (same). There being no jurisdictional impediment to hearing the present motion, the Court now turns to the merits of Plaintiffs' request.

**B.     Likelihood of Success**

"The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). While Plaintiffs carry the burden of demonstrating a likelihood of success, they are not required to prove their case in full at this stage but only such portions that enable them to obtain the injunctive relief they seek. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Here, Plaintiffs argue they are likely to succeed on the merits on all of their claims, but the Court need only discuss one: the claim for mandamus relief, which is premised on the children's independent right to seek asylum under well settled law. To prevail on this claim, Plaintiffs must show (1) their claim is clear and certain, (2) Defendants' duty to perform "is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997) (citing *Azuring v. Von Raab*, 803 F.2d 993, 995 (9th Cir. 1986)). Plaintiffs have shown a likelihood of success on this claim for the reasons stated below.

First, Plaintiffs' claim is clear and certain. Plaintiffs argue—and it is undisputed— that prior to the Government's separation policy, Plaintiffs and similarly situated children

would have been subject to proceedings under § 235 of the INA. (Compl. ¶ 53.) Under § 235, a person who requests asylum by expressing a fear of persecution in his or her home country has the right to be interviewed by an asylum officer to determine whether that individual has a credible fear of returning to their home country. The statute provides,

> If an immigration officer determines that an alien ... who is arriving in the United States ... is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum ... or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer ....

8 U.S.C. § 1225(b)(1)(A)(ii). Here, Plaintiffs allege they have "triggered the non-discretionary duty outlined" in this statute, namely, the duty to refer them for an interview by an asylum officer. (Compl. ¶ 122.) More specifically, they allege they have requested an opportunity to explain to an immigration or asylum officer their fear of returning to their home countries, but not one of them has received a response to those requests. (*Id.* ¶¶ 73, 80, 88, 94, 99, 103.)

Second, the duty set out in the statute is "nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt[.]" *Patel*, 134 F.3d at 931. By its plain language, the statute provides the immigration officer "shall" refer the alien for an interview by an asylum officer. 8 U.S.C. § 1182(b)(1)(A)(ii). "The word 'shall' generally imposes a nondiscretionary duty[.]" *SAS Institute, Inc. v. Iancu*, ___ U.S. ___, 138 S.Ct. 1348, 1351 (2018); *see also Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 691 (9th Cir. 2003) (stating use of "shall" reflects nondiscretionary duty). Indeed, Defendants' counsel conceded that children, like the Plaintiffs here, have a right to pursue asylum separate and apart from their parents. (Rep. Tr. at 14-15, August 8, 2018, ECF No. 180.)

Third, there is no dispute that no other adequate remedy is available to Plaintiffs.

In their opposition to the motion, Defendants did not address whether Plaintiffs had shown a likelihood of success on this claim. However, at oral argument and in *Ms. L.* Defendants raised the defense of waiver. Specifically, Defendants assert Plaintiffs' parents

waived their children's separate right to pursue asylum by executing one of the forms during the reunification process.

An election form was provided to parents in *Ms. L.* and attached to their class notice, which was entitled "Notice of Potential Rights for Certain Detained Alien Parents Separated from their Minor Children." The class notice was created and distributed to advise the parents of their right to reunification with their children. The notice was proposed, in part, as a response to a form the Government had previously distributed to parents in the *Ms. L.* class, entitled "Separated Parent's Removal Form." (*See* Ms. L. Pls.' Mem. Regarding Reunification Forms, Ex. 63, ECF No. 32.) The government form offered two choices to parents with final removal orders: (1) to be reunited with their child for the purpose of repatriation to their home country, or (2) to "voluntarily" return to their home country without their child, who would "remain in the United States to pursue available claims of relief." (*Id.*) The *Ms. L.* plaintiffs argued the government form was misleading and was being used improperly to suggest to parents that they needed to waive their right to contest removal in order to obtain reunification. Plaintiffs in *Ms. L.* therefore requested the Court to issue the class notice to "dispel that impression, and nothing more." (*See Ms. L.*, ECF No. 168 at 1.) The class notice included information left out of the government form, namely, that a preliminary injunction had issued compelling the government to reunify the parents with their children. (*See* Ms. L. Pls.' Mem. Regarding Reunification Forms, Ex. 62, ECF No. 32.) The class notice clarified, "The government must reunify you with your child. ... You do NOT need to take any action to be reunified with your child. ... You do NOT need to agree to removal from the United States in order to be reunified with your child." (*Id.* at 10.) A similar statement appeared on the election form attached to the class notice. (*Id.* at 11) ("You DO NOT have to agree to removal from the United States in order to be reunified with your child. Even if you continue to fight your case, the government must still reunify you.")

Notably, neither the government form nor the class notice included any language concerning the children's separate rights to pursue asylum. Similarly, there is no language

on the election form concerning the children's right to pursue asylum, the parents' ability to waive those rights, or any place on the form for the parents to actually execute such a waiver. The reason for this omission is apparent: the class notice was designed to advise *parents* of their *right to reunification* without having to take any action on their own or abandoning their own challenge to removal, and nothing more. The core allegations in *Ms. L.* focused on the constitutional violation caused by the Government's family separation policy, and the obligation of the Government to reunify the separated families to redress the wrong. The class notice, therefore, was not designed to advise parents of their childrens' asylum rights, let alone to waive those rights. It was about the right to reunify. The complete absence of any mention of the children's asylum rights on any of the forms at issue here dooms Defendants' waiver argument. *See Kirkpatrick v. Chappell*, 877 F.3d 1047, 1055 (9th Cir. 2017) (stating "knowing, voluntary, and intelligent requirement" that applies to waivers means the waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."); *see also United States v. Lopez-Vasquez*, 1 F.3d 751, 754 (9th Cir. 1993) ("Courts should indulge every reasonable presumption against waiver, and they should not presume acquiescence in the loss of fundamental rights.") (citations omitted).

Nevertheless, Defendants maintain the election form provided with the class notice—created in the context of reunification—constitutes a waiver of the children's separate rights to pursue asylum. Defendants hinge their waiver argument on two statements in the election form. First, the form states: "IF YOU LOSE YOUR CASE AND THE GOVERNMENT IS GOING TO REMOVE YOU FROM THE UNITED STATES, you must decide at that time whether you want your child to leave the United States with you." Next, the form prompts those parents to choose from one of three options: (1) to be removed with child, (2) to be removed without child, or (3) if undecided, "to talk with a lawyer before deciding" whether to be removed with or without child. Based on that language, Defendants argue the election form was "designed to allow the parent to make the election whether to forego any separate relief their child may have and return home

together[.]" (ECF No. 169 at 3.) However, as discussed above, that is simply not the case. The class notice and election form were not designed for that purpose; they focused solely on the parents' reunification rights, not the childrens' rights, and certainly not on any waiver of those rights.

On the present record, Defendants have not met their burden of showing that the parents' execution of either the government form or the election form provided with the class notice effected a waiver of their children's asylum rights. *See Orantes-Hernandez v. Smith*, 541 F.Supp. 351, 377 (C.D. Cal. 1982) (citing *In re Gault*, 387 U.S. 1, 42 (1967)) ("Abandonment of a federal right must be intentional; it will not be presumed.") Thus, Plaintiffs have shown a likelihood of success on their second claim for relief, which weighs in favor of issuance of the temporary restraining order.[6]

### C. Irreparable Injury and Balance of Equities

Turning to the next two factors, Plaintiffs must show they are "'likely to suffer irreparable harm in the absence of preliminary relief[,]'" and demonstrate that "'the balance of equities tips in [their] favor.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (quoting *Winter*, 555 U.S. at 20). Plaintiffs have met that burden.

Plaintiffs allege, and Defendants do not dispute, that the Government plans to remove recently reunified families absent a court order to the contrary. (*See* Mem. of Law in Supp. of Pls.' Application for TRO and Prelim. Inj. at 23, ECF No. 6-1) (stating government is threatening to remove Plaintiffs without providing them access to any asylum proceedings); (Rep. Tr. at 14, August 8, 2018, ECF No. 180) (confirming government's plan "to remove these families as soon as practical.") This would harm Plaintiffs and similarly situated children by depriving them of their right to seek asylum. "By definition, aliens seeking asylum contend that they are subject to persecution when

---

[6] In light of this conclusion the Court declines to address at this time Plaintiffs' other claims.

they return to their own countries, where they risk further harm, potentially including imprisonment or even death." *Desta v. Ashcroft*, 365 F.3d 741, 748 (9th Cir. 2004).

In their brief in opposition to the present motion, Defendants did not raise any hardships to them if the temporary restraining order was granted. At oral argument, defense counsel asserted there was some unrest in at least one of the family detention facilities, but it is unclear what that unrest is and there is no evidence before the Court to support counsel's statement. To be sure, each side faces some burden if a temporary restraining does or does not issue, but on balance these factors clearly favor Plaintiffs. *Cf. Barahona-Gomez*, 167 F.3d at 1236 (upholding finding that balance of hardships favored plaintiffs where "without a preliminary injunction, ... the plaintiffs may never have an opportunity to seek review of the actual cause of denial of their applications for suspension of deportation.")

### D. Public Interest

The final factor for consideration is the public interest. *See Hernandez*, 872 F.3d at 996 (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)) ("When, as here, 'the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction.'") To obtain the requested relief, "Plaintiffs must demonstrate that the public interest favors granting the injunction 'in light of [its] likely consequences,' i.e., 'consequences [that are not] too remote, insubstantial, or speculative and [are] supported by evidence.'" *Id.* (quoting *Stormans*, 586 F.3d at 1139).

Here, there are a number of public interests at stake. First, there is "a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). Second, there is "a public interest in prompt execution of removal orders[.]" *Id.* As the Supreme Court has stated, "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id.* (quoting *Reno v. American-*

*Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999)).  Third, there is a public interest in ensuring that government officials charged with executing the law fulfill their duties.  *See* 8 U.S.C. § 1225(b)(1)(A)(ii) (stating that if an alien "indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B).")  Finally, there is a public interest in ensuring that Plaintiffs' constitutional right to family association and integrity is upheld.  Each of these interests is important, and all but one will be served by the issuance of a temporary restraining order in this case.

The only interest that will not be served is the interest in prompt execution of removal orders.  There is no doubt this an important interest.  This Court, situated as it is on the border between the United States and Mexico, "is keenly aware of the serious problems already caused by the influx of illegal aliens into the United States and recognizes the dangers to both citizens and illegal immigrants arising from this situation." *Orantes-Hernandez*, 541 F.Supp. at 379-80.  However, "these problems must not and surely need not be solved by depriving people of their rights." *Id.* at 380.  By furthering the other public interests set out above, "the Court is not directing that the doors be opened to illegal aliens with no right to be in this country." *Id.*  Rather, the Court is upholding the rights provided to all persons under the United States Constitution, rights that are particularly important to minor children seeking refuge through asylum, and rights that have been specifically recognized by the President's Executive Order in the particular circumstances of this case.  *See* Executive Order § 1, 2018 WL 3046068 ("[T]he policy of this Administration [is] to maintain family unity, including by detaining alien families together where appropriate and consistent with law and available resources.")  Maintaining family unity under these circumstances is appropriate, consistent with law, *see* 8 U.S.C. § 1225(b)(1)(B)(iv) (alien may choose persons to consult with prior to credible fear interview or any review thereof), and would not unfairly or unduly tax available government resources.  Notably, the laws enacted by Congress provide "that those aliens with claims of persecution in their homeland should at least be heard and that those with valid claims

14

18cv1832 DMS (MDD)

of persecution in their homeland should receive protection." *Orantes-Hernandez*, 541 F.Supp. at 380. In the end, it may be that many of these children will be denied the relief they seek, but the public has an interest in ensuring these children receive the process that Congress has provided. The hasty removal of these children and their parents at the expense of an ordered process provided by law would be antithetical to the public interests set out above, which plainly weigh in favor of granting the requested relief.

## II.
## CONCLUSION

For the reasons set out above, the Court hereby GRANTS Plaintiffs' motion for a temporary restraining order as follows:

Defendants and their officers, agents, servants, employees, attorneys, and all those who are in active concert or participation with them are hereby TEMPORARILY RESTRAINED from removing from the United States, until the merits of Plaintiffs' motion for a preliminary injunction is resolved: (a) "All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child," as modified by the Court's class definition in *Ms. L.*, and their children; (b) all such parents who have already been reunified, and their children; (c) all such parents who have allegedly waived reunification, and their children; and (d) all such parents whose background checks or case file reviews have allegedly raised "red flags," and their children.[7]

---

[7] Unlike in *Ms. L.*, Plaintiffs here did not move for class certification in conjunction with their request for TRO. Defendants, however, did not object to providing classwide relief other than on Plaintiffs' claim under 8 U.S.C. § 1252(e)(3). That claim remains pending before Judge Friedman in the district court for District of Columbia, and thus, that issue is more appropriately addressed to him. To the extent there is any objection to providing classwide relief here, the Court notes the reasoning behind certification of the class in *Ms.*

IT IS FURTHER ORDERED that Defendants shall immediately provide a copy of this Order to any person or entity that may be subject to any provision of this Order, including their officers, agents, servants, employees, attorneys, and all those who are in active concert or participation with them or have any involvement in the removal of individuals from the United States.

A status conference will be held on **August 24, 2018**, at **1:00 p.m.**  Plaintiffs' counsel should be prepared to address whether they wish to proceed with a request for a preliminary injunction, and counsel for both parties should be prepared to address how they wish to proceed on the issues of class certification and Plaintiffs' entitlement to asylum proceedings under §§ 235 or 240.[8]  What is anticipated, as the Court has grown accustomed to in the *Ms. L.* case, is the parties will meet and confer and propose a solution—one which follows the law, and is equitable and reflective of ordered governance.

Dated:  August 16, 2018

Hon. Dana M. Sabraw
United States District Judge

---

*L.* would seem to apply equally here.  *See Ms. L. v. U.S. Immigration and Customs Enforcement,* ECF No. 82.

[8] Consistent with the Court's Orders in *Ms. L.*, it appears Plaintiffs' asylum claims would be more appropriately addressed under § 235 since Plaintiffs were not truly "unaccompanied" minors warranting removal proceedings under § 240.  Nevertheless, the Court reserves ruling on that issue pending guidance from the parties on how they wish to proceed.